**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**HANEEF MUHAMMAD**

        **Plaintiff,**             **Case No. 2:21-cv-4165**
                                    **Judge Edmund A. Sargus, Jr.**
     **v.**                      **Magistrate Judge Elizabeth P. Deavers**

**OFFICER SCOTT P. GIBSON,** *et al.*,

        **Defendants.**

## OPINION AND ORDER

This matter is before the Court on: Plaintiff's Motion to Compel Discovery and Allow Witness Statement (ECF No. 43); Plaintiff's Motion to Disqualify Counsel (ECF No. 45); Plaintiff's Motion for Leave to File an Amended Complaint (ECF Nos. 46 and 51); Plaintiff's Motion for Summary Judgment (ECF No. 44); Plaintiff's Motion to Amend Motion for Summary Judgment (ECF No. 68); Plaintiff's Motion for Partial Summary Judgment (ECF No. 69); Plaintiff's Motion for Status Conference (ECF No. 76); Defendant Lowe's Home Centers, LLC's ("Lowe's") Motion for Summary Judgment (ECF No. 56); Defendant Lowe's Motion to Strike Plaintiff's Untimely Dispositive Motions (ECF No. 72); Defendant Scott P. Gibson's ("Officer Gibson") Motion for Summary Judgment (ECF No. 60);  and Defendants' Joint Motion to Strike Witness Statement (ECF Nos. 39 and 47).

For the following reasons, Defendant Lowe's Motion for Summary Judgment is **GRANTED**; Defendant Officer Gibson's Motion for Summary Judgment is **GRANTED**; Plaintiff's Motions for Summary Judgment, Amend Summary Judgment and for Partial Summary Judgment are  **DENIED**; Defendant Lowe's Motion to Strike Plaintiff's Untimely Dispositive Motions is **DENIED**; Plaintiff's Motion to Compel Discovery and Allow Witness Statement is

**GRANTED IN PART AND DENIED IN PART**; Plaintiff's Motion to Disqualify Counsel is **DENIED**; Plaintiff's Motion for Leave to File an Amended Complaint is **DENIED**; Plaintiff's Motion for Status Conference is **DENIED AS MOOT**; and Defendants' Joint Motion to Strike Witness Statement is **DENIED AS MOOT**.

Plaintiff, proceeding *pro se*, brings this case following several interactions with a police officer working a special duty assignment at Lowe's. As discussed more fully below, the actions of both the special duty police officer and Lowe's do not give rise to any violations of the Constitution or state law. The uncontroverted record, which includes a number of Plaintiff's own admissions, reveals that at all relevant times to this action, Defendants never detained or arrested Plaintiff, and they never interfered with his ability to shop freely at Lowe's. While Plaintiff subjectively felt uncomfortable in the presence of the special duty police officer, avoidance of this discomfort is neither protected by the U.S. Constitution nor state law. This Court accordingly grants summary judgment in favor of Defendants.

## I.     BACKGROUND

This case arises out of a series of incidents between Plaintiff Haneef Muhammad ("Plaintiff") and Defendant Columbus Police Officer, Scott P. Gibson ("Officer Gibson"), taking place primarily at Defendant Lowe's retail store located at 3899 South High Street, Columbus, Ohio (the "Store"). The Court will first address the relationship between Officer Gibson and Lowe's before turning to the incidents giving rise to Plaintiff's claims.

### A.  The Relationship Between the Defendants.

Defendant Officer Gibson is a 25-year veteran of the Columbus Police Department, and he was a member of the police department's Special Duty unit at all times relevant to this action. (Gibson Dep., ECF No. 56-1, PageID 1167.) As part of his work with the special duty unit, Officer

Gibson was assigned to the Store beginning in 2017, though he had worked special duty assignments throughout his career. (*Id.* at PageID 1167, 1173.)

As an officer assigned to the Store, Officer Gibson is considered an "on duty" police officer, retaining all the powers and authority emanating from that position. (*Id.* at PageID 1173-74.) At the Store, his role is to deter theft and assist Lowe's employees and customers. (*Id.* at PageID 1167, 1174.) For example, and as testified to by Officer Gibson, if a Lowe's employee indicates to Officer Gibson that he or she suspects a customer of shoplifting, Officer Gibson independently investigates the claim. (*Id.* at PageID 1174.) Officer Gibson testified that he does not detain or arrest suspected shoplifters unless he has probable cause. (*Id.*)  Lowe's employees, on the other hand, are not permitted to stop or detain shoplifters. (*Id*. at PageID 937.)

Lowe's does not pay Officer Gibson directly for his special duty services. (*Id.* at PageID 128.) Instead, payment is made to the Columbus Division of Police, Officer Gibson's employer. Lowe's has never trained Officer Gibson nor provided him with an employee handbook. (*Id.* at PageID 884.) Lowe's does not have the authority to direct the day-to-day performance of Officer Gibson's job as a police officer. (*Id.*) And Lowe's does not have the power to terminate Officer Gibson. (*Id.*)

**B.  The First Incident.**

On January 9, 2021, Plaintiff, along with his companion, Ms. Renchen, entered the Store with the purpose of purchasing paint and popcorn. (Muhammad Dep., ECF No. 56-2, PageID 1180.) At some point during this visit, a Lowe's employee noticed Plaintiff's companion, a white female, and asked Officer Gibson to watch her because she resembled someone who had stolen from Lowe's in the past. (*Id.*, PageID 1181; Gibson Dep., ECF No. 52-1, PageID 808.) Gibson did as instructed. (Gibson Dep., ECF No. 52-1, PageID 810.)

Plaintiff eventually noticed Officer Gibson toward the back of the Store, clad in his police uniform, looking in his direction for several minutes. (Muhammad Dep., ECF No. 56-2, PageID 1180; Am. Compl., ECF No. 1-1, PageID 14.) Feeling uncomfortable given Officer Gibson's presence, Plaintiff decided to approach Officer Gibson and speak to him. (Muhammad Dep., ECF No. 56-2, PageID 1181.) Officer Gibson stated to Plaintiff that his companion looked like someone who had previously shoplifted at the Store. (*Id.*; Gibson Dep., ECF No. 52-1, PageID 808.)

Plaintiff interpreted Officer Gibson's statement concerning Ms. Renchen's likeness to a past shoplifter as an accusation of shoplifting against Plaintiff himself. (Muhammad Dep., ECF No. 56-2, PageID 1181 ("Like, she's with me.  If she look like it, then I'm, -- you saying that I'm [shoplifting], we in this" together.) This prompted Plaintiff to go to speak with a Lowe's manager and request proof of the alleged shoplifting or, in the alternative, direct Officer Gibson to "stop staring at them and following them around the store in an intimidating way." (Am. Compl., ECF No. 1-1, PageID 15.) The unidentified Lowe's manager did not provide Plaintiff with any video of his interaction with Officer Gibson. (Muhammad Dep., ECF No. 56-2, PageID 1182.)

Neither Lowe's nor Officer Gibson suspected or accused Plaintiff of shoplifting, and Officer Gibson never detained or arrested Plaintiff for any crime. (Gibson Dep., ECF No. 52-1, PageID 918-20; Joint Mot. Sanctions, ECF No. 39-1, PageID 441-42.) Following his interaction with the unidentified Lowe's manager, Plaintiff proceeded to complete his purchase and leave the Store. (Muhammad Dep., ECF No. 56-2, PageID 1181.)

### C.  The Second Incident.

About one month after the first incident, on February 7, 2021, Plaintiff and Ms. Renchen had another encounter with Officer Gibson at the Store. (IAB Investigation, ECF No. 18-2, PageID 189.) This incident occurred while Plaintiff and Ms. Renchen were shopping for popcorn.

(Muhammad Dep., ECF No. 54-1, PageID 1014-15.) While walking past the aisle in which Plaintiff and Ms. Renchen were shopping, Officer Gibson allegedly "placed his elbow on a bucket and began watching the plaintiff and his companion shop." (Am. Compl., ECF No. 1-1, PageID 15.) Plaintiff again took issue with Officer Gibson's presence and again approached Officer Gibson. (*Id.*)

Unlike the first incident, however, Plaintiff recorded this incident with his cell phone and has produced the recording. (Video 2, ECF No. 30.) The video depicts a brief conversation between Plaintiff and Officer Gibson: Plaintiff asks Officer Gibson for his name; Officer Gibson complies. (*Id.*) Plaintiff tells Officer Gibson that he does not "want to get shot in the back again,"[1] and then clarifies that he has never actually been shot in the back. (*Id.*) Officer Gibson then asks about Plaintiff's mother's house.[2] (*Id.*)

The recording continues, and Plaintiff can be heard complaining to a Lowe's manager about Officer Gibson's conduct. (*Id.*) Specifically, Plaintiff complains that Officer Gibson (1) has accused Plaintiff of stealing from the Store, (2) is bothering Plaintiff while he shops, (3) suspects Plaintiff of shoplifting, and (4) made an insensitive remark concerning Plaintiff's mother's house. (*Id.*) In response to Plaintiff's complaints, the Lowe's employee indicates that Plaintiff can "just walk away and go buy the popcorn." (*Id.*)

Plaintiff eventually walked away without purchasing any items. (Muhammad Dep., ECF No. 54-1, PageID 1015.)

---

[1] This comment appears to stem from Plaintiff's general fear of being a victim of an officer-involved shooting.

[2] This references a prior interaction between Plaintiff and Officer Gibson at Plaintiff's late-mother's house. While the record is unclear concerning this interaction, the following is undisputed: Plaintiff called the police while at his mother's house after the January 9 incident; another officer responded and began speaking with Plaintiff; Officer Gibson later arrived, briefly spoke with Plaintiff and the other officer, and then Officer Gibson left the property. (Muhammad Dep., ECF No. 54-1, PageID 993-94.)

### D. The Third Incident.

On an unspecified date following the first two incidents, Plaintiff and his son went to the Store to pick up several doors that Plaintiff ordered online. (Am. Compl., ECF No. 1-1, PageID 14-15.) Plaintiff noticed Officer Gibson standing in the paint aisle, and Officer Gibson noticed Plaintiff. (*Id.* at 16.) Plaintiff claims that he went to a manager of the Store and requested Officer Gibson's removal from the area. (*Id.*) Plaintiff then alleges that the manager offered to retrieve any items that Plaintiff needed. (*Id.*) Officer Gibson did not speak with Plaintiff during this incident. (Gibson Dep., ECF No. 52-2, PageID 107.) Plaintiff recorded a portion of this incident, which consists of Plaintiff filming a stationary Officer Gibson and his narration. (Video 4, ECF No. 30.)

### E. Plaintiff's Claims.

As a result of the incidents described above, Plaintiff brought the instant action against Defendants. (*See generally*, Am. Compl. ECF No. 1-1.) While Plaintiff's claims are not specifically set forth in his amended complaint, Plaintiff has since indicated that he is advancing the following claims: (1) violations of 42 U.S.C. § 1983, (2) defamation, and (3) negligent infliction of emotional distress. (Pl. Mot. Sum. J., ECF No. 44.)

## II.    NON-DISPOSITIVE MOTIONS

Before turning to the summary judgment motions, the Court will first address several of the pending non-dispositive motions that have an impact on Defendants' requests for judgment: (A) Plaintiff's motion to disqualify counsel, (B) Plaintiff's motion to compel discovery, (C) Plaintiff's motion to allow Ms. Renchen's witness statement, (D) Lowe's motion to strike Plaintiff's untimely dispositive motions, and (E) Plaintiff's motions for leave to file an amended complaint. The Court addresses each motion in turn.

### A.    Plaintiff's Motion to Disqualify Counsel.

Plaintiff has moved to disqualify counsel (ECF No. 45) and that motion is fully at issue (ECF Nos. 47, 49). Plaintiff seeks to disqualify Officer Gibson's counsel, the City of Columbus Attorney's Office, because "The City of Columbus Attorney's Office has a conflict of interest in this case as normally the City Attorney's Office prosecute[s] perpetrators of crimes against Citizens of Columbus Ohio. In this case the Columbus City Attorney Office is defending someone accused of a crime or violations of U.S laws." (ECF No. 45.) This argument is without merit.

The disqualification of counsel is an "extreme sanction" that Courts should refrain from imposing unless "there is a reasonable possibility that some specifically identifiable impropriety actually occurred, and where the public interest in requiring professional conduct by an attorney outweighs the competing interest of allowing a party to retain counsel of his choice." *SST Castings, Inc. v. Amana Appliances, Inc.*, 250 F. Supp. 2d 863, 865 (S.D. Ohio 2002) (internal quotations omitted). In determining whether improper conduct rises to the level warranting disqualification, the Sixth Circuit "looks 'to the codified Rules of Professional Conduct for guidance.'" *O'Brien v. Brunner*, No. 2:15-cv-2803, 2016 U.S. Dist. LEXIS 34606, at *7 (S.D. Ohio 2016) (quoting *Big Idea Co. v. Parent Care Res., LLC*, 2012 U.S. Dist. LEXIS 131239, at *7 (S.D. Ohio 2012)).

Defendants maintain, and this Court agrees, that there is no conflict of interest that requires disqualifying Officer Gibson's counsel. Plaintiff does not point to any rule of professional conduct that Officer Gibson's counsel violates through her representation. Moreover, Officer Gibson's counsel is an Assistant City Attorney with the City of Columbus who has had no involvement with criminal prosecution cases and has never had any prior interactions with any of the witnesses, parties, or other counsel involved in this action. There is simply no conflict of interest here; as such, Plaintiff's motion to disqualify counsel is hereby denied. (ECF No. 45.)

## B. Plaintiff's Motion to Compel Discovery.

On the final day of the limited discovery period, Plaintiff filed a motion to compel asking the Court to order Defendants to produce two types of evidence: (1) the identities of two Lowe's employees and (2) various video footage from the Store. (Pl. Mot. Compel, ECF No. 43). Defendants oppose Plaintiff's motion, arguing that Officer Gibson has no responsive materials regarding Lowe's employees (ECF No. 47) and the Plaintiff has failed to comport with the federal discovery rules (ECF No. 55) excusing Lowe's from providing the requested discovery to the extent that it would be available. Plaintiff has replied to support his motion. (ECF No. 49.)

"Determining the proper scope of discovery, including limiting or denying discovery, falls within the broad discretion of the trial court." *Nolan v. Jenkins*, 2011 U.S. Dist. LEXIS 160220, at *4 (S.D. Ohio 2011) (citing *Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998)). Federal Rule of Civil Procedure 37 governs motions to compel. Rule 37(a)(3)(A) provides that a party may move to compel disclosure if "a party fails to make a disclosure required by Rule 26(a)." And Rule 37(a)(3)(B) authorizes a party to move for an order compelling production if a party fails to respond to a request for production. However, to prevail on such a motion, the moving party must make a good-faith effort to resolve the discovery dispute before asking the court to intervene. Fed. R. Civ. P. 37(a)(1); *see also* S.D. Ohio Civ. R. 37.1 ("[M]otions . . . relating to discovery shall not be filed . . . unless the parties have first exhausted among themselves all extrajudicial means for resolving their differences . . . .").

This Court agrees with Lowe's that Plaintiff has not satisfied the requirement of Rule 37(a)(1) and S.D. Ohio Civ. R. 37.1—that is, Plaintiff has failed to meet and confer with counsel prior to filing his motion to compel. This undisputed fact, standing alone, provides sufficient grounds for denying Plaintiff's motion.

However, even if Plaintiff had met his burden of meeting and conferring, this Court would still deny his motion in part based on this case's chronology. The original discovery period ended on February 21, 2022. The Court later re-opened discovery, limiting discovery to "any outstanding written discovery which was served prior to February 21, 2022, as well as to the depositions of Plaintiff and Defendant Officer Gibson." (ECF No. 40.) Plaintiff then filed his motion to compel on June 22, 2022—the final day of the limited discovery period and more than 120 days after the original discovery cutoff date. Plaintiff's motion to compel seeks discovery on matters *outside* of the limited scope of the re-opened discovery period, and Plaintiff has failed to put forth any credible reason as to why he failed to make these requests during the original discovery period. Thus, denial of Plaintiff's motion is also appropriate on these grounds. *See Nolan*, 2011 U.S. Dist. LEXIS 160220 (denying plaintiff's motions to compel where motions filed four months after discovery and plaintiff did not explain her untimely filings).

Finally, even if Defendants provided Plaintiff with the discovery he seeks, the Court finds no relevance to it that could impact its decision herein. Plaintiff seeks "the identification of the unnamed Lowe's employee because, without it, there is no way to determine what gave Lowe's LLC suspicion of shoplifting." (Reply Mot. Compel, ECF No. 49, PageID 730.) If Plaintiff received the employee's name, and the employee provided the information that the Plaintiff's companion did not resemble someone who had shoplifted, it would still fail to provide a basis for Plaintiff's claims as explained in detail below. Accordingly, the Court denies Plaintiff's Motion to Compel as it relates to this discovery issue.

### C. Plaintiff's Motion to Allow Witness Statement.

In the same motion to compel discovery, Plaintiff also asks the Court to consider the witness statement of Ms. Renchen in deciding the pending summary judgment motions. (Mot.

Compel., ECF. No. 43.) Defendants both oppose this portion of the motion, arguing that Plaintiff failed on multiple occasions to disclose the identity of Ms. Renchen—failures resulting in violations of Federal Rules of Civil Procedure 26(e) and 33.[3] (ECF Nos. 47, 55.)

Federal Rule of Civil Procedure 33 provides that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). After a party initially responds to an interrogatory, that party is still under a duty to supplement or correct its response. *See* Fed. R. Civ. Pro. 26(e)(1)(A) ("A party who has…responded to an interrogatory…must supplement or correct its disclosure or response…in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]"). Federal Rule of Civil Procedure 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Kirby v. AXA Equitable Fin. Servs.*, 2016 U.S. Dist. LEXIS 193856 (S.D. Ohio 2016) (striking undisclosed witness declarations from consideration on summary judgment).

Here, Plaintiff seeks to introduce into evidence the witness statement of Ms. Renchen—a witness to the first two incidents whose identity Plaintiff never disclosed during the original discovery period despite a duty to do so. First, Officer Gibson's interrogatory #8 asked Plaintiff the following: "Identify- by name, address, and phone number- the "companion" who was with

---

[3] Defendants also argue that Plaintiff's failure to initially disclose Ms. Renchen's identity violates Federal Rule of Civil Procedure 26(a); However, the parties stipulated that they would not make initial disclosures in this action. (Preliminary Pretrial Order, ECF No. 9.)

Plaintiff…at Lowe's during Incident 1 and Incident 2." (Joint Mot. Sanctions, ECF No. 39-1, PageID 435.) In response, Plaintiff answered: "No longer a companion." This response fails to meet Rule 33's standard requiring the interrogatory be answered "fully." Second, Plaintiff also failed to supplement or correct this response in a timely manner, and he has provided no justification for this failure. Thus, under Rule 37(c)(1), Plaintiff "is not allowed to use that…witness to supply evidence on a motion…." Fed. R. Civ. P. 37(c)(1). Be that as it may, if this Court were to consider the information contained in Plaintiff's witness' statement it does nothing to change the conclusion reached below. Consequently, the Court finds no reason to strike the statement and grants Plaintiff's Motion to Compel as it relates to this issue.

### D. Defendant Lowe's Motion to Strike Plaintiff's Untimely Dispositive Motions.

Defendant Lowe's seeks an Order striking the following motions as untimely: "Plaintiff's Amended Motion for Summary Judgment Against the Defendants" (ECF No. 67), "Plaintiff's Amended Motion for Summary Judgment Against the Defendants" (ECF No. 68), "Plaintiff's Motion for Partial Summary Judgment Against the Defendants" (ECF No. 69), and "Timeline of Incidents Based Off Evidence" (ECF No. 70).[4] (Mot. Strike., ECF No. 72.)

Defendant argues that these filings are untimely, and therefore the Court should strike them. The Court views Plaintiff's late motion as a request to modify the Court's amended scheduling order. (ECF No. 40.) As such, Federal Rule of Civil Procedure 16(b) guides the Court's review. *See Andretti v. Borla Performance Indus.*, 426 F.3d 824, 830 (6th Cir. 2005) (affirming district court's decision applying Rule 16(b) in analyzing plaintiff's untimely motion for summary judgment as a request to modify the court's scheduling order).

---

[4] Plaintiff consents to withdrawing ECF Nos. 69 and 70 (Pl. Opp'n Mot. Strike, ECF No. 74); Accordingly, this Court's analysis focuses on the propriety of striking Plaintiff's late-filed motions for summary judgment (ECF Nos. 67, 68).

Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Andretti*, 426 F.3d at 830 (quoting *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)). Additionally, the district court should assess the degree of prejudice facing the party opposing the motion. *Id.*

Here, the Court's amended scheduling order set a dispositive motion deadline on July 1, 2022. (ECF No. 40.) On June 10, 2022, Plaintiff timely filed his summary judgment motion. (ECF No. 44.) Lowe's timely filed its summary judgment motion on June 30, 2022 (ECF No. 56), and Officer Gibson timely filed his motion on July 1, 2022 (ECF No. 60). As for the motions that Lowe's wishes to have stricken, Plaintiff filed them on or after July 9, 2022.

Plaintiff argues that he had good cause for the late filings, citing (1) his unfamiliarity with the litigation process given his status as a *pro se* litigant, and (2) a death in the family, which required him to attend a funeral on July 1, 2022. (Pl. Opp'n Mot. Strike, ECF No. 74.) Plaintiff also argues that Defendants will not be prejudiced if the Court accepts his untimely motions.

In this case, the Court finds Plaintiff's arguments well taken. Defendants will not be prejudiced because they need not respond specifically to Plaintiff's untimely motions. This is because Defendants have already sufficiently responded to Plaintiff's motion for summary judgment in the documents in the record before this Court, and Plaintiff's new filings add nothing for which additional response is necessary. Plaintiff is *pro se*, which requires the Court to construe his pleadings in a more liberal manner than those filed by an attorney; in other words, the Court may still consider improperly pleaded legal claims, which it has done. (*See* Section III.A.a.) Thus, the Court will fully consider Plaintiff's claims by adjudicating his timely motion for summary

judgment as well as considering his arguments made in his untimely motions. Defendants have sufficiently responded to these arguments in their Motion to Strike, which this Court has also considered. The Court therefore denies Lowe's motion to strike Plaintiff's untimely dispositive motions. (ECF No. 72.)

### E. Plaintiff's Motions for Leave to Amend.

Plaintiff also seeks leave to file a third version of his complaint. (ECF Nos. 46 and 51.) A district court should "freely" grant a party leave to amend her complaint "when justice so requires." Fed. R. Civ. P. 15(a). "A court need not grant leave to amend, however, where amendment would be 'futile.'" *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  In adjudicating a claim of futility, the court must apply the standard applicable to motions to dismiss.  *Id*. That is, determining whether the factual allegations present any plausible claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (clarifying the plausibility standard articulated in *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Other factors to be considered include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, [and] undue prejudice to the opposing party." *Foman*, 371 U.S. at 182.

Plaintiff argues that his discovery of "[n]ew evidence" warrants granting his request, but he fails to identify this new evidence, and the procedural and factual information he does include are not newly discovered—they simply recite a combination of his prior allegations, accusations, and his personal sentiment. For the same reasons then that the Court finds herein that Plaintiff has

failed to raise any claims that survive, it would be futile for the Court to permit amendment. The Court therefore denies Plaintiff's motions to amend. (ECF No. 46 and 51.)

## III. MOTIONS FOR SUMMARY JUDGMENT

Plaintiff filed a motion for summary judgment and two amendments to that motion (ECF No. 44, 67, 68), and both Defendants also filed motions for judgment as a matter of law (Lowe's Mot. Sum. J., ECF No. 56; Officer Gibson Mot. Sum. J., ECF No. 60). Defendants' motions for summary judgment included their opposition to Plaintiff's summary judgment motion. Plaintiff filed a response in opposition to each Defendant's motion for summary judgment (Pl. Opp'n Lowe's, ECF No. 66; Pl. Opp'n Officer Gibson, ECF No. 77). Defendants filed a reply in support of their motions (Lowe's Reply, ECF No. 71; Officer Gibson Reply, ECF No. 75).

### A. Legal Standards.

#### a. *Pro se* litigants.

In this case, Plaintiff is proceeding without the assistance of counsel. A *pro se* litigant's pleadings are to be construed liberally and are held to a less stringent standard than are formal pleadings drafted by lawyers. *Haines v. Kerner,* 404 U.S. 519, 520-21(1972); *see also Estelle v. Gamble,* 429 U.S. 97, 106 (1976). A court should make a reasonable attempt to read the pleadings of a *pro se* litigant to state a valid claim on which the plaintiff could prevail, despite any failure to cite proper legal authority, confusion of various legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Ashiegbu v. Purviance,* 74 F. Supp. 2d 740, 749 (S.D. Ohio 1998) (citing *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991)). "This standard does not mean, however, that *pro se* plaintiffs are entitled to take every case to trial." *Id.* (citing *Pilgrim v. Littlefield,* 92 F.3d 413, 416 (6th Cir. 1996)). "Indeed, courts should not assume the role of advocate for the *pro se* litigant." *Id.* (citing *Hall,* 935 F.2d at 1110).

### b. Summary judgment.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita*, 475 U.S. at 587–88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be

insufficient to survive summary judgment). It is with this standard in mind that the instant motions will be decided.

### B. Plaintiff's Section 1983 Claim Against Officer Gibson Fails as a Matter of Law.

Plaintiff asserts that Officer Gibson unlawfully harassed him in violation of 42 U.S.C. § 1983. Officer Gibson disagrees, arguing that he is entitled to the defense of qualified immunity. This Court agrees.

Section 1983 claims are subject to the affirmative defense of qualified immunity which, if applicable, shields individuals from liability. *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). Qualified immunity protects state officials so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, (1982) (citations omitted). The doctrine balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from liability when they perform their duties reasonably. *Pearson,* 555 U.S. at 231. The accommodation for reasonable error exists because officials should not always err on the side of caution due to the fear of being sued. *Id.*

Analysis of qualified immunity entails two steps: (1) considering the allegations in the light most favorable to the party injured, whether a constitutional right has been violated; and (2) whether that right was clearly established. *Swiecicki v. Delgado,* 463 F.3d 489, 497 (6th Cir. 2009). The order of this inquiry is not mandatory, nor does a court need to reach both steps of the analysis. *Pearson,* 555 U.S. at 236.

Plaintiff points to no facts demonstrating that Officer Gibson violated a clearly established constitutional right. Plaintiff argues that the incidents described in Section I demonstrate that Plaintiff was a victim of Officer Gibson's unlawful harassment. Specifically, Plaintiff asserts that

he was unlawfully harassed because (1) Officer Gibson accused Plaintiff of shoplifting, (2) certain conversations with Officer Gibson made Plaintiff fear for his safety, and (3) Plaintiff believes Officer Gibson intended to menace him. There is no merit to any of these assertions.

First, the record unequivocally shows that Officer Gibson did *not* accuse Plaintiff of shoplifting. Not only is there an absence of evidence indicating that Officer Gibson accused Plaintiff of shoplifting, but Plaintiff has even admitted that he was never accused of shoplifting. (Muhammad Dep., ECF No. 56-2, PageID 1178 ("No, he didn't say I was stealing to me, but he dang sure treated me like…a criminal.")) To be clear, the comment giving rise to this alleged shoplifting accusation stemmed from a statement made to Officer Gibson that Plaintiff's companion—*not Plaintiff*—resembled someone who had stolen from the Store in the past. This comment, which accuses no one of committing any crime (especially not Plaintiff), does not support a Section 1983 claim.

Second, none of the documented conversations between Plaintiff and Officer Gibson amount to a violation of Plaintiff's constitutional rights. The Court acknowledges that Officer Gibson's comment during the Second incident, which concerned Plaintiff's late-mother's house, may have broached a sensitive area for Plaintiff. But the record reveals that Officer Gibson was unaware of Plaintiff's mother's passing when he made the comment. (Muhammad Dep., ECF No. 54-1, PageID 1002 ("Q. My question is: prior to this conversation…had you told Officer Gibson that your mother had passed away? A. No, didn't tell him at all."); Gibson Dep., ECF No. 52-1, PageID 842.) Given the absence of Officer Gibson's knowledge of Plaintiff's mother's death, the Court does not find that Officer Gibson harassed Plaintiff with his inquiry.

Plaintiff also takes issue with Officer Gibson's question asking "how many times have you been shot in the back?" (This question was in response to Plaintiff's claim that he does not "want

to get shot in the back again.") There is no evidence in the record indicating that Officer Gibson asked this question intending to harass or offend Plaintiff. (*See* Gibson Aff., ECF No. 20-1, ¶¶ 34-36.) Even assuming Officer Gibson asked this question with malicious intent, Plaintiff has failed to direct the Court's attention to any caselaw suggesting that avoidance of such a comment is a constitutionally protected right.

Third, Plaintiff argues that, according to his own speculation, Officer Gibson menaced him at the Store. The record does not provide any support for Plaintiff's speculation; indeed, the record indicates that Officer Gibson did not have any knowledge that his presence at Lowe's would cause Plaintiff to fear for his safety. (*See* Gibson Dep., ECF No. 52-1, PageID 843 ("[Muhammad:] Did you know that I was recording you out of fear for my life? [Gibson:] I knew you were recording me. For whatever reason I'm not sure."); Gibson Aff., ECF No. 20-1, ¶¶ 34-36.) The record also suggests that Officer Gibson did not have any knowledge of Plaintiff's fear given that *Plaintiff* willingly approached Officer Gibson during the first two incidents, and throughout the third incident, Officer Gibson remained stationary. (Muhammad Dep., ECF No. 54-1, PageID 1011, 1015, 1031.) Officer Gibson even testified that he believed Plaintiff was unafraid of him due to the number of times Plaintiff walked by Officer Gibson during the third incident. (Gibson Dep., ECF No. 52-1, PageID 1170.) Plaintiff never told Officer Gibson that he was afraid, and Officer Gibson never expressed that he had such knowledge during any of the incidents. Plaintiff invites the Court to rely on his own speculation in finding that Officer Gibson menaced him, but the Court declines his invitation.

Officer Gibson's actions, even when viewed in the light most favorable to Plaintiff, do not meet the threshold for any legal claim. Plaintiff has failed to satisfy the first qualified immunity prong—that is, Plaintiff cannot show that a constitutional right has been violated. *Swiecicki*, 463

F.3d at 497. The Court therefore finds that Officer Gibson is entitled to qualified immunity in this matter; Plaintiff's Section 1983 claim against Officer Gibson fails as a matter of law.

### C.  Plaintiff's Section 1983 Claim Against Lowe's Fails as a Matter of Law.

Defendant Lowe's argues that it is entitled to summary judgment on Plaintiff's 42 U.S.C. § 1983 claim against it.  This Court agrees.

To establish a valid claim against Lowe's under 42 U.S.C. § 1983, Plaintiff claim "must satisfy two elements: (1) the deprivation of a right secured by the Constitution or laws of the United States and (2) the deprivation was caused by a person acting under color of state law. A plaintiff may not proceed under § 1983 against a private party no matter how discriminatory or wrongful the party's conduct." *Boykin v. Van Buren Twp.*, 479 F.3d 444, 451 (6th Cir. 2007) (quoting *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003)).

As discussed above in Section III.B, Plaintiff cannot establish that Defendants deprived him of a right secured by the Constitution or laws of the United States. This, standing alone, is sufficient to defeat Plaintiff's Section 1983 claim against Lowe's. But even if Plaintiff could show he was deprived of a protected right, the record unequivocally demonstrates that Lowe's was not acting under color of state law during the challenged conduct.

The issue of whether a private corporation acts "under color of state law" is a question of law reserved for the Court. *Probst v. Cent. Ohio Youth Ctr.*, 511 F. Supp. 2d 862, 867 (S.D. Ohio 2007). In answering this question, the Court evaluates whether the private corporation's "actions so approximate the state action that they may be fairly attributed to the state." *Id.* (citing *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000)). The Sixth Circuit employs four separate tests to determine whether a private corporation acts under color of state law: (1) the state compulsion test, (2) the symbiotic relationship or substantial nexus test, and (3) the public function

test, and (4) the entwinement test. *Marie v. Am. Red Cross*, 771 F.3d 344, 362 (6th Cir. 2014). The Court will apply each test to the relevant facts—though the result remains the same under each application: Lowe's did not act under color of state law.

### a.  The state compulsion test.

"The state compulsion test requires that a state 'exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state.'" *Lansing v. City of Memphis*, 202 F.3d 821, 829 (6th Cir. 2000) (quoting *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)). To meet this test, "'a plaintiff must allege and prove that state officials coerced or participated in the [private actor's] decision-making' process." *Snodgrass-King Pediatric Dental Assocs., P.C. v. DentaQuest USA Ins. Co.*, 780 F. App'x 197, 205 (6th Cir. 2019) (quoting *Wilcher v. City of Akron*, 498 F.3d 516, 520 (6th Cir. 2007)).

Here, Plaintiff makes no allegations that that the State compelled Lowe's to engage in any of the challenged conduct. Moreover, a review of the record shows that the only State-private connection relevant to this action is the special duty contract between Lowe's and the Columbus Division of Police. Yet this contract, which governs Officer Gibson's limited role at Lowe's, cannot conceivably be construed as sufficient state coercion of Lowe's conduct. Plaintiff therefore cannot establish state action under the state compulsion test.

### b.  The symbiotic relationship/substantial nexus test.

Plaintiff, likewise, cannot establish state action under the symbiotic relationship or substantial nexus test. Under this test, "a private party's conduct constitutes state action where 'there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself.'" *Marie*, 771

F.3d at 363 (6th Cir. 2014) (quoting *Wilcher*, 498 F.3d at 520). "[M]ere cooperation simply does not rise to the level of merger required for a finding of state action." *Lansing*, 202 F.3d at 831.

It is undisputed that Lowe's and Officer Gibson entered into a special duty contract in which Officer Gibson provided security for Lowe's. It is also undisputed that when Officer Gibson is on special duty, he follows people around and ensures that they are not shoplifting. This is undoubtedly a cooperative relationship. However, this is only "mere cooperation." *See Lansing*, 202 F.3d at 831. Lowe's does not—and cannot—direct Officer Gibson's day-to-day performance as a police officer. Lowe's cannot fire Officer Gibson. Lowe's also has never trained Officer Gibson, nor does Lowe's directly pay Officer Gibson for his services. As such, Plaintiff cannot establish that there is a sufficiently close nexus between Officer Gibson and Lowe's that would render Lowe's actions fairly attributable to the state.

### c.  The public function test.

To show that Lowe's is a state actor under the public function test, Plaintiff must demonstrate that Lowe's "exercise[s] powers which are traditionally exclusively reserved to the state, such as holding elections or eminent domain." *Wolotsky*, 960 F.2d at 1335 (6th Cir. 1992) (internal citations omitted). This is a nonstarter; providing home improvement supplies has not been a power which has traditionally been exclusively reserved to the state. Thus, Lowe's is not a state actor under the public function test.

### d.  The entwinement test.

Plaintiff cannot establish that Lowe's is a state actor under the entwinement test. This test requires Plaintiff to show that Lowe's is "entwined with governmental policies or that the government is entwined in [the private entity's] management or control." *Marie*, 771 F.3d at 363-64 (internal quotations omitted). "The crucial inquiry under the entwinement test is whether the

'nominally private character' of the private entity 'is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings [such that] there is no substantial reason to claim unfairness in applying constitutional standards to it.'" *Vistein v. Am. Registry of Radiologic Technologists*, 342 F. App'x 113, 128 (6th Cir. 2009) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 298 (2001)).

Plaintiff cannot point to any facts demonstrating that Lowe's "is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings." *See Id.* As mentioned above, the only relevant connection between Lowe's and the state is the special duty contract—a contract aimed at deterring theft. This contract, which results in a limited police presence at the Store, does not amount to the "pervasive entwinement of public institutions and public officials" in Lowe's operations required to trigger state actor status.

In sum, Lowe's is not a state actor under any of the tests that the Sixth Circuit employs, and therefore Lowe's was not acting under color of state law when engaged in the challenged conduct. Accordingly, Plaintiff's Section 1983 claim against Lowe's fails as a matter of law.

**D.  Plaintiff's Defamation Claim Fails as a Matter of Law.**

Plaintiff avers that Officer Gibson made a defamatory statement against him when Officer Gibson stated that Plaintiff's companion, Ms. Renchen, resembled someone who had shoplifted in the past. Although Mr. Muhammad was not the subject of the statement, he claims that it applied to him through association, as he was shopping with Ms. Renchen at the time the statement was made.

Under Ohio law, a plaintiff can successfully bring an action for defamation by showing: "(1) a false and defamatory statement concerning [the plaintiff]; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either

actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Hodges v. Meijer, Inc.*, 129 Ohio App. 3d 318, 324 (Ohio Ct. App. 1998) *quoting Akron-Canton Waste Oil v. Safety-Kleen Oil Serv.*, 81 Ohio App.3d 591, 601, 611 (Ohio Ct. App. 1992). The plaintiff must demonstrate that the defamatory statement was "communicated to a third person by the defendant," and that the listener understood "the defamatory nature of the statement." *Rosado-Rodriquez v. Nemenz Lincoln Knolls Mkt.*, 2020-Ohio-4184, ¶ 25 (Ohio Ct. App. 2020).

Here, Plaintiff fails to satisfy the first element of defamation because the uncontroverted evidence demonstrates that the statement at issue concerned Ms. Renchen—*not Plaintiff*. The record is devoid of any evidence that Officer Gibson or any Lowe's employee made any accusation, or false and defamatory statement concerning Plaintiff himself. Plaintiff explicitly acknowledges this fact. (Muhammad Dep., ECF No. 54-1, PageID 1015.) This fact is fatal to Plaintiff's claim. *See Ellerbee v. Chipotle Servs., LLC*, 2021 U.S. Dist. LEXIS 199734, at *21 (S.D. Ohio 2021), *appeal dismissed*, 2022 U.S. App. LEXIS 4164 (6th Cir. 2022) (asserting that a statement speaking about a third party, not the plaintiff himself, does not meet the element of a defamation claim requiring the statement be about the plaintiff.). Additionally, Ohio courts have held that stating a mere suspicion does not amount to an accusation. *See Brooks v. Lady Foot Locker*, 2005-Ohio-2394, ¶ 49 (Ohio Ct. App.) (holding that appellants failed to establish the existence of a false or defamatory statement because the record "shows that Jones only stated his suspicion and that he admitted repeatedly that he did not see Appellants take anything from the store.").

Moreover, Plaintiff cannot meet the second element because there was no unprivileged publication to a third party. The statement, originally made by a Lowe's employee to Officer

Gibson, informed Officer Gibson that Plaintiff's companion resembled a past shoplifter. Officer Gibson did not repeat this statement to any other third party. He only repeated it to Plaintiff when Plaintiff questioned why Officer Gibson was watching Ms. Renchen. There is no evidence that any other person actually heard the statement. *Rosado-Rodriguez*, 2020-Ohio-4184 at ¶ 29 (concluding that even if there were people present in the store at the time the statement was made, there must be evidence from an actual person that he or she heard the statement).

Because the record is absent of any evidence that any Lowe's employee or Officer Gibson ever made a false or defamatory statement about Plaintiff, coupled with the fact that there was no publication of the statement, Plaintiff's defamation claim fails as a matter of law.

### E.  Plaintiff's Claim of Negligent Infliction of Emotional Distress Fails as a Matter of Law.

Plaintiff also claims to have suffered negligent infliction of emotional distress from his encounters with Officer Gibson; the Court disagrees. Under Ohio law, recovery for negligent infliction of emotional distress is limited to instances where the individual "was a bystander to an accident or was in fear of physical consequences to his own person." *Heiner v. Moretuzzo*, 73 Ohio St.3d 80, 85 (Ohio 1995) *quoting High v. Howard*, 64 Ohio St.3d 82, 85 (Ohio 1992), *overruled on other grounds in Gallimore v. Children's Hosp. Med. Ctr.*, 67 Ohio St.3d 244 (Ohio 1993). Accordingly, a plaintiff must have either witnessed or been exposed to a "real or impending physical calamity" to recover for a standalone claim for negligent infliction of emotional distress. *Id.*

Here, Plaintiff cannot establish negligent infliction of emotional distress because he was neither a bystander to any accident nor exposed to any real or impending physical danger. Ohio law clearly establishes that distress caused by a fear of nonexistent physical peril is insufficient to establish a claim for negligent infliction of emotional distress. *See id.* at 86 ("Ohio does not

recognize a claim for negligent infliction of serious emotional distress where the distress is caused by the plaintiff's fear of a nonexistent physical peril."). Quite simply, there is no evidence in the record to support a contention that Plaintiff was ever subject to real or impending physical danger. Because Plaintiff cannot show that he was a bystander to an accident or was in fear of existent physical danger to himself, his claim for negligent infliction of emotional distress fails as a matter of law.

## IV.     CONCLUSION

For the foregoing reasons, there is no genuine issue of material fact that Defendants are not liable to Plaintiff under *any* legal theory; Defendants are entitled to summary judgment as a matter of law. The Court hereby orders the following: Defendant Lowe's Motion for Summary Judgment is **GRANTED** (ECF No. 56); Defendant Officer Gibson's Motion for Summary Judgment is **GRANTED** (ECF No. 60); Plaintiff's Motion for Summary Judgment, Motion for Partial Summary Judgment, and his Amendments to those Motions are **DENIED** (ECF No. 44, 67, 68); Defendant Lowe's Motion to Strike Plaintiff's Untimely Dispositive Motions is **DENIED** (ECF No. 72); Plaintiff's Motion to Compel Discovery and Allow Witness Statement is **GRANTED IN PART AND DENIED IN PART** (ECF No. 43); Plaintiff's Motion to Disqualify Counsel is **DENIED** (ECF No. 45); Plaintiff's Motion for Leave to File an Amended Complaint is **DENIED** (ECF Nos. 46 and 51); Plaintiff's Motion for Status Conference is **DENIED AS MOOT** (ECF No. 76); and Defendants' Joint Motion to Strike Witness Statement is **DENIED AS MOOT** (ECF Nos. 39 and 47).

The Clerk is directed to close this case.
**IT IS SO ORDERED**.

**10/18/2022**                                         **s/Edmund A. Sargus, Jr.**
**DATE**                                                   **EDMUND A. SARGUS, JR.**
                                                                 **UNITED STATES DISTRICT JUDGE**